UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DODSON, | NO. 2:04-cv-1068-MCE-CMK |
| Plaintiff, | |
| v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| DOLLAR TREE STORES, INC.; dba DOLLAR TREE #1203; 98 CENTS'N DEALS, JASON B. MATECKI; and DOES 1 through 10, | |
| Defendants. | |

----oo0oo----

This matter came on for a Court trial on June 28, 2006. Mark Emmett and Adams Sorrells from the Law Offices of Lynn Hubbard appeared for Plaintiff Robert Dodson.  Shane Singh from Kring & Chung, LLP represented Defendant Dollar Tree Stores, Inc. After hearing the evidence and arguments, the Court makes the following Findings of Fact and Conclusions of Law.

///

///

///

1

**FINDINGS OF FACT**

The Court's Final Pretrial Order of May 22, 2006 reveals the following facts to be undisputed:

1. Defendant Dollar Tree Stores, Inc., a corporation, is the operator and lessee of the Dollar Tree Store ("the Store") located at 5101 Fruitridge Road, Sacramento, California.

2. The Store is a "public accommodation," as defined by both the Americans with Disabilities Act ("ADA") at 42 U.S.C. § 12181(7)(E), and California Health and Safety Code § 19955. The Store further is a "business establishment" within the meaning of California Civil Code §§ 51 and 51.5.

3. The Store opened for business of December 10, 1998. Construction of the Store occurred 90 days beforehand.

4. Defendant Dollar Tree Stores, Inc. does not own, lease or control the common areas or the parking lot of the shopping center.[1]

5. The Store never sought a hardship exemption to excuse violations of California's disability access laws at the Store. See Cal. Health & Safety Code § 19957.

In addition, prior to the commencement of trial the parties stipulated to the following additional facts:

6. Plaintiff, a high C5 paraplegic, is a mobility impaired individual.

---

[1] Plaintiff has settled his claims against Defendant Jason B. Matecki, owner of the shopping complex where the Store is located. In addition, all claims against the other named Defendant, 98 Cents 'N Deals, were also dismissed by Court Order filed December 8, 2004.

7. The ISA sign located adjacent to the Store's sole functional entrance is placed 28.5 inches from the ground as measured by Plaintiff's expert witness, Joe Card.

8. The pictures appended to the reports of both Mr. Card and the defense expert, Kim Blackseth, are properly authenticated as depicting areas in and immediately adjacent to the Store.

9. The Store qualifies as a newly-constructed public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181 et seq., and its implementing guidelines for new construction and alterations, known as the Americans with Disabilities Act Access Guidelines ("ADAAG"). See 42 U.S.C. § 12186(a) and 28 C.F.R. Part 36, Appendix A.

The evidence presented at the court trial supports the following factual findings:

10. Plaintiff is confined to a motorized wheelchair and relies on that wheelchair for mobility purposes.

15. At all times relevant to this lawsuit, Plaintiff lived across the street from the Store and has shopped at the Store an average of one to two occasions per week since February of 2004.

16. Plaintiff testified that he has encountered various accessibility barriers upon visiting the Store that have remained similar on each visit.

17. According to Plaintiff, the entrance to the Store is not automated, requiring him to kick against the door to open it. While Plaintiff admitted that the doorway was marked with an Internation Symbol of Accessibility ("ISA") sign, which designates mobility-impaired access, he claims that placement of the sign was too low for him to see it easily.

3

1 He also testified that once inside, the Store's aisles are
2 frequently cluttered, making them difficult to traverse in his
3 wheelchair.  Finally, Plaintiff alleges that the Store's single
4 handicapped-designated checkstand is not always open.  Even when
5 he is able to use the checkstand, Plaintiff asserts that he
6 cannot pull out the accessible check writing platform, and also
7 is unable to use the card reading machine for his ATM card.

        18.  Plaintiff's expert, Joe Card, testified that he
inspected the Store in August of 2005 and confirmed that the
barriers encountered by Plaintiff were in violation of ADAAG
guidelines.  First, as the parties stipulated, the height of the
ISA sign adjacent to the Store's main entrance, at 28.5 inches.
Card claims that placement less than 60 inches violates both
ADAAG 4.30.6 as well as the provisions of the California Building
Code, Cal. Code of Regs., tit. 24 ("CBC") at 1117B.5.7.  Second,
Card opined that as of the time of his August 2005 inspection,
the pressure required to open the manually operated doors to the
Store exceeded five pounds, in violation of CBC 1133B.2.5 (Card
measured ingress resistance at 8 pounds, and egress at 30 pounds,
apparently due to the door dragging on a floor mat).  Third, with
respect to the Store's only designated disabled checkstand, Card
found that the checkstand did not display language indicating
that it was "to be open at all times for customers with
disabilities", as required by CBC 1110B.1.3.  In addition,
because the Store has five checkstands, Card testified that two,
as opposed to one, checkstand had to be disability compliant in
any event.

28 ///

1  Card further found that the check writing platform that had been
2  installed required gripping to pull out in contravention of ADAAG
3  4.27.4 and CBC 1117B.6.  Fourth, with respect to required
4  emergency egress from the Store, Mr. Card opined that because a
5  second main entrance to the store was not used and was blocked
6  with merchandise, it violated the provisions of ADAAG.  Finally,
7  with respect to the emergency exit itself, Card claimed that its
8  sign was not properly illuminated, that the door's strike side
9  clearance was insufficient, and that the "panic" hardware mounted
10 on the door was placed too high, all in violation of applicable
11 provisions of the ADAAG and CBC.
12     19.  Kim Blackseth provided expert testimony on behalf of
13 the defense.  He initially visited the Store in November of 2005
14 and revisited the facility on June 27, 2006, just before trial,
15 for purposes of rechecking certain compliance issues.  Blackseth
16 disagreed with Joe Card on placement of the ISA sign adjacent to
17 the Store's main entrance, testifying that the ADA did not even
18 require that particular sign and that the 60 inch placement
19 designation applied to tactile signs with Braille lettering,
20 only.  Second, Mr. Blackseth measured door resistance at only 5
21 pounds, or in compliance with ADA/CBC specifications.  Third,
22 with respect to disabled checkstand access, Blackseth agreed that
23 two checkstands had to be available at the Store under ADAAG's
24 new construction standards which the parties agreed applied to
25 the Store.  Blackseth's most recent inspection, however, revealed
26 that the checkstand that was available had the required verbiage
27 despite Joe Card's claim to the contrary.
28 ///

5

1  Blackseth further determined that the checkwriting platform did
2  not require gripping to operate, and that placement of a velcro
3  strap for ready use of the ATM machine also did not require a
4  gripping motion.  Fourth, although Blackseth testified that the
5  second main entrance to the Store was clearly unused, with
6  merchandise displays permanently blocking the entrance, he
7  conceded that entrance still had to be accessible under ADAAG new
8  construction standards.  Finally, Blackseth also admitted that
9  the fire exit door did not comply with ADAAG standards applicable
10 to new construction.
11      20.  Although Plaintiff complained that the Store's aisles
12 were frequently cluttered, Blackseth testified that the only
13 impediments he observed were related to ongoing merchandise
14 stocking.  According to Blackseth, temporary obstructions of that
15 nature are not subject to ADAAG guidelines.
16      21.  The Court gives credence to Kim Blackseth's
17 measurements of door tension taken just prior to trial and
18 determines that door resistance for the one set of operational
19 doors into the Store fell within ADAAG requirements.
20      22.  The Court further determines that signage for the
21 single disabled checkstand within the Store satisfied the
22 mandates of both ADAAG and the CBC.  In addition, the Court finds
23 Mr. Blackseth's testimony persuasive to the extent that both the
24 checkstand platform and ATM machine provided at that checkstand
25 were disability complaint.  Nonetheless, because the Store was
26 equipped with five checkstands, under applicable new construction
27 standards two, and not just one, checkstands must be accessible
28 to the disabled.

6

23. The Court finds that no permanent obstructions to aisles were present in the Store that would trigger violations under the ADAAG or the CBC.[2] Any obstructions were only temporary in nature and for stocking purposes, and accordingly did not pose any violations.

## CONCLUSIONS OF LAW

1. Pursuant to the parties' stipulation, the Store constitutes a newly constructed facility and must therefore comply with the accessibility standards set forth in the ADAAG. 28 C.F.R. § 36.406(a); 42 U.S.C. § 12183(a). The Store has not contended that it should be excused from compliance with those standards on grounds that it would be "structurally impracticable" to meet ADAAG requirements. 42 U.S.C. § 12183(a)(1); see Long v. Coast Resorts, 267 F.3d 918, 923 (9th Cir. 2001).

2. ADAAG 4.1.2(7)(c) requires that in the event all entrances to a commercial are not accessible, those that are must be identified by an ISA sign. In this case, because one of the two main entrances to the Store was permanently blocked by merchandise and not in use, the single operational public entrance had to be equipped with an ISA sign. Under ADAAG 4.30.6, that sign constitutes permanent identification and must be installed 60 inches from floor level.

///

---

[2]ADAAG 4.3 and CBC 1110B2.1 require minimum clearance of 36 inches in circulation aisles.

1  At 28.5 inches, the placement of the sign in this case violated
2  that provision, as well as the corresponding provision found at
3  CBC 1117.B5.7.  The above-cited ADAAG and CBC provisions do not
4  apply only to tactile signs as the Store contends.
5       3.   Moreover, and in any event, the experts for both
6  Plaintiff and the Store agree that both sets of entrance doors
7  must be accessible under ADAAG new-construction guidelines.
8       4.   While the single disabled checkstand complies with
9  applicable requirements under both the ADAAG and the CBC, as a
10 newly-constructed facility two checkstands must be accessible to
11 the disabled given the five checkstands in place at the Store.
12 ADAAG 7.3(2).
13      5.   Both of the experts testifying in this case further
14 agree that the fire exit door fails to comply with ADAAG and CBC
15 requirements applicable to new construction.  The clearance on
16 the strike side of the door is less than twelve inches, as
17 required by ADAAG 4.13.6 and CBC 1133B.2.4.2.  The "Exit" egress
18 sign is not illuminated in accordance with ADAAG 4.1.3 and CBC
19 1003.2.8.5.  Finally, placement of the "panic hardware" for
20 opening the fire exit is placed at approximately 48 inches above
21 the finished floor, in violation of CBC 1133B.2.5.2, which
22 requires that hand-activated door opening hardware shall be
23 centered between 30 and 44 inches from the floor.
24      6.   Because Plaintiff has dropped his claim for damages
25 under the Unruh Act at California Civil Code § 52, the remaining
26 relief sought is injunctive in nature, only under both the ADA
27 and California Civil Code § 51.
28 ///

8

As enumerated above, the Court finds that Plaintiff is entitled to such relief under the ADA and the Unruh Act[3] as to the following issues:

    A.  Placement of the ISA sign adjacent to the Store's entrance is too low;

    B.  The Store must provide two handicapped-accessible checkstands;

    C.  Closure of the second primary entrance to the Store is in contravention of guidelines applicable to new construction;

    D.  The Store's fire exit door fails to meet accessibility guidelines. The sign above that door is not illuminated, clearance on the strike side of the doorway is insufficient, and the door hardware is placed above levels mandated by the CBC.

Defendant Store, however, prevails on other issues as follows:

    A.  The pressure required to open the entrance door currently being used is within acceptable tolerances;

    B.  The disabled checkstand as currently configured meets all applicable requirements; and

    C.  There are no permanent impediments to aisle circulation within the Store that run afoul of either the ADAAG or the CBC.

///
///
///
///
///
///
///
///

---

[3] The Unruh Act, at California Civil Code § 51(f), makes a violation of the ADA a violation of the Unruh Act as well.

Judgment shall be entered partially in favor of Plaintiff, and partially in favor of Defendant Store, in accordance with the above.

IT IS SO ORDERED.

DATED: July 25, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE